UNITED STATES DISTRICT COURT                    <u>FOR ONLINE PUBLICATION ONLY</u>
EASTERN DISTRICT OF NEW YORK

JAVIER JONES,

                                        Plaintiff,          <u>MEMORANDUM</u>
                                                            <u>AND ORDER</u>
                - versus -                                  12-CV-3658

THE CITY OF NEW YORK, et al.,

                                        Defendants.

APPEARANCES:

           UGO UZOH, P.C.
                   304 Livingston Street, Suite 2R
                   Brooklyn, NY 11217
           By:     Ugochuckwu Uzoh
                   *Attorney for Plaintiff*

           MICHAEL A. CARDOZO
           Corporation Counsel of the City of New York
                   100 Church Street
                   New York, NY 10007
           By:     Melanie Speight
                   *Attorney for Defendants*

JOHN GLEESON, United States District Judge:

              Javier Jones brings this action against the City of New York (the "City") and

several New York City Police Department officers under 42 U.S.C. §§ 1983, 1985 and New

York state law.  Jones alleges that the officers are liable for false arrest, malicious prosecution,

violation of his right to a fair trial/fabrication of evidence, violation of his First Amendment

rights, use of excessive force, conspiring to deprive him of his constitutional rights, and various

state tort, negligence and civil rights claims.  He claims that the City is liable based on its failure

to properly train and supervise its officers.  These allegations stem from Jones's arrest on

January 24, 2012.  Jones has moved for summary judgment on his claims of false arrest,

malicious prosecution, fabricating evidence, failure to intervene, First Amendment retaliation, and municipal liability.  Defendants have moved for summary judgment on all claims.  For the reasons set forth below, plaintiff's motion is denied and defendants' cross-motion is granted.

BACKGROUND

A.  *Factual Background*

The following facts are taken from Local Rule 56.1 statements, affidavits, deposition excerpts, and other documentary evidence submitted by the parties.  Unless otherwise noted, these facts are either not in dispute or are construed in the light most favorable to the party opposing the motion under consideration.

On January 24, 2012, at approximately 11:24 P.M., Police Officers David Rodriguez and Alvaro Contreras heard a radio run regarding a robbery in progress with a firearm near Caton and Flatbush Avenues in Brooklyn, New York.  Uzoh Decl. Ex. 3, at 26:18-21, 28:8-15, 33:4-22, 38:18-19 (Rodriguez Dep.).  As they neared the intersection, the officers were flagged down by a man in the middle of Caton Avenue.  Defendants' Rule 56.1 Statement ¶ 6.  The man told the officers that he was the person who had called 911.  Uzoh Decl. Ex. 3, at 52:6-13 (Rodriguez Dep.); Ex. 4, at 29:24-30:10 (Contreras Dep.).  The man pointed down the block and stated "There he goes.  There he goes.  He is the one with the gun."  Uzoh Decl. Ex. 3, at 41:18-22 (Rodriguez Dep.).  Contreras, who had exited the police car to speak with the man, saw at least three people walking away from where he was pointing.  Uzoh Decl. Ex. 4, at 30:14-17 (Contreras Dep.) ("Q: How many individuals did you see when you turned around?  A: I don't recall how many.  More than two, I can tell you that much.").  Contreras shouted for the men to stop, at which point they began to run away.  Uzoh Decl. Ex. 4, at 31:8-19 (Contreras Dep.).

2

Rodriguez saw two individuals running away.  Uzoh Decl. Ex. 3, at 42:23-43:5 (Rodriguez Dep.).

Contreras chased the fleeing men on foot, while Rodriguez pursued them in the police car.  *Id.* at 43:9-44:8; Uzoh Decl. Ex. 4, at 32:2-22 (Contreras Dep.).  Rodriguez eventually caught up with one of the suspects, later identified as Frantz Machon, subdued him, and placed him under arrest.  Uzoh Decl. Ex. 3, at 42:8-10, 44:19-22 (Rodriguez Dep.).  Contreras ran after the other suspects, one of whom is believed to be Owen Welch.  *Id.* at 45:14-46:11.  While Contreras was chasing Welch, he saw one of the other suspects he had initially been pursuing emerge from hiding between two cars and run off.  Uzoh Decl. Ex. 4, at 37:19-39:4 (Contreras Dep.).  Contreras continued running after a suspect believed to be Welch until Contreras observed him throw something as he ran; Contreras heard a clank and believed the suspect had ditched a firearm.  *Id.* at 59:14:24.  Contreras, Rodriguez and other officers searched the area where Contreras saw the suspect throw something, but did not find a firearm.  Uzoh Decl. Ex. 3, at 45:14-47:3 (Rodriguez Dep.).  At some point soon thereafter, other police officers arrested Welch and transported him back to the 70th precinct.  *Id.* at 36:22-37:15.

Jones was arrested just before midnight on the same evening, January 24, 2012, in front of his apartment building located at 1834 Caton Avenue.  Plaintiff's Rule 56.1 Statement ¶ 2; Uzoh Decl. Ex 6, at 1 (Arrest Report).  Jones was in the lobby of his apartment building speaking to a neighbor when unknown police officers[1] entered the building.  Plaintiff's Rule 56.1 Statement ¶ 2.  The officers asked Jones and his neighbor if they were residents of the building, and they responded that they were.  *Id.* ¶ 3.  The officers then directed Jones and his neighbor to

---

[1]        As counsel for both sides explained at oral argument, even after the benefit of discovery, the identity of the officers who confronted and arrested Jones and then brought him to the precinct remains undetermined.  I am mystified by the Police Department's inability to ascertain such basic and important facts, but plaintiff seeks no relief in this regard.

3

go back to their apartments. Uzoh Decl. Ex. 2, at 32:4-8 (Jones Dep.). Jones's neighbor

returned to his apartment but Jones decided to continue on his way to the store to buy food, so he

exited the lobby and walked a few steps outside. *Id.* at 32:9-11, 36:18-23, 37:3-24. As Jones

walked out of the building, one of the officers told Jones to "come here." *Id.* at 38:19-20, 40:2-3.

Jones stopped walking but did not go towards the officer. *Id.* at 40:2-14. The officer then

approached Jones and handcuffed him. *Id.* at 40:23-41:2. Jones asked the officer why he was

being arrested but the officer did not respond. *Id.* at 41:7-23. Jones was then placed in a police

car and driven to the 70th Precinct. *Id.* at 43:3-9.

      Though the question of when Rodriguez learned that a third man had been

arrested in connection with the 911 call is disputed,[2] it is undisputed that some point after

Rodriguez returned to the precinct he was aware of that fact. Uzoh Decl. Ex. 3, at 61:8-20

(Rodriguez Dep.); Plaintiff's Counter Rule 56.1 Statement ¶ 22. Rodriguez testified that he was

informed at the precinct by unknown sources, possibly over the radio, that Jones was the third

suspect and that a "show-up"[3] had been conducted where the complaining witness and his

companion identified Jones as "being with the other two individuals" who had been arrested.

Uzoh Decl. Ex. 3, at 61:16-17, 151:11-20 (Rodriguez Dep.).

      At the precinct, Rodriguez interviewed the complaining victim, Raymond Faloye,

who had called 911 and initially flagged down Rodriguez and Contreras on Caton Avenue, as

well as Faloye's girlfriend, Latique Gibbs, who was with him at the time of the alleged crime.

*Id.* at 85:2-86:17, 98:2-100:4.

---

[2]     At one point during his deposition, Rodriguez stated "I did not even know that there was a third person arrested for this situation until I got back to the 70th precinct." Uzoh Decl. Ex. 3, at 61:11-13 (Rodriguez Dep.). Later in the deposition, however, when asked "Is it your testimony that while at the scene, you had information that there was a third individual who was under custody; is that correct?" he replied "Correct." *Id.* at 74:2-6.

[3]     Rodriguez testified that a "show-up" is when a suspect is shown to a victim or witness at or near the scene of a reported crime and asked if the suspect was one of the people involved in the crime. Uzoh Decl. Ex. 3, at 61:24-62:8 (Rodriguez Dep.).

According to Rodriguez, Faloye and Gibbs told him that they were in a liquor store close to the intersection of Flatbush and Caton Avenues at approximately 11:30 P.M. and they saw Jones with Machon and Welch inside the store.  Plaintiff's Rule 56.1 Statement ¶¶ 34-35.  Machon tried to speak with Gibbs, but she did not want to talk to him.  Uzoh Decl. Ex. 3, at 138:21-139:10 (Rodriguez Dep.).  Faloye told Machon to leave Gibbs alone, which angered Machon, who started making comments towards Faloye.  *Id.* at 139:14-19.  Machon then lifted up his shirt and displayed a firearm in his waistband and may have also removed the gun and pointed it at Faloye.[4]  *Id.* at 139:20-140:6.  Jones, Machon and Welch then left the liquor store, and Faloye and Gibbs saw Machon give what appeared to be a firearm to Welch.  Plaintiff's Rule 56.1 Statement ¶ 44.  Faloye and Gibbs then saw Machon, Welch and Jones enter an apartment building for a short period of time and then exit the building back onto the street.  *Id.* ¶ 47.  At that point, Faloye called 911 to report the incident, *id.* ¶ 48, and shortly thereafter he flagged down Rodriguez and Contreras on Caton Avenue.  *Id.* ¶ 57.

Rodriguez testified that after interviewing Faloye and Gibbs, he and Detective John Pierre questioned Jones for approximately 30 minutes.  Uzoh Decl. Ex. 3, at 58:7-21 (Rodriguez Dep.).  Jones, on the other hand, remembers being questioned by just one officer who was not in uniform (Rodriguez was in uniform at the time).  Uzoh Decl. Ex. 2, at 47:11-48:20 (Jones Dep.).  According to Jones, when he was asked by the officer whether he had been involved in a liquor store robbery he replied "I have no idea what you're talking about."  *Id.* at 49:25-50:5.

---

[4]     Rodriguez stated at one point in his deposition that Faloye and Gibbs told him that Machon pulled the gun from his waistband and pointed it Faloye.  Uzoh Decl. Ex. 3, at 99:18-21, 100:20-102:2 (Rodriguez Dep.).  However, he also testified that Faloye and Gibbs told him that Machon only lifted his shirt to show the gun and did not remove it from his waistband, *id.* at 139:20-140:6, which conforms with the description of the incident contained in the criminal complaint filed against Jones, Machon and Welch by Rodriguez.  Uzoh Decl. Ex 9 (Complaint) ("Defendant Machon did lift defendant Machon's shirt and did display what appeared to be a firearm . . . .").  Rodriguez also stated that, in his opinion, to display a firearm is the same as pointing it at someone.  Uzoh Decl. Ex. 3, at 100:16-24 (Rodriguez Dep.).

Rodriguez then generated an arrest report and a complaint report regarding the arrest of Jones.  Uzoh Decl. Ex. 3, at 20:18-24 (Rodriguez Dep.); Uzoh Decl. Ex. 6 (Arrest Report); Uzoh Decl. Ex. 8 (Complaint Report).  In the arrest report, Rodriguez listed the charges against Jones as criminal possession of a weapon, in violation of New York Penal Law 256.03, a felony, and second degree menacing, in violation of New York Penal Law 120.14, a misdemeanor.  Uzoh Decl. Ex. 6 (Arrest Report); Plaintiff's Counter Rule 56.1 Statement ¶ 30. Sergeant Patrick Golden was the patrol supervisor for Rodriguez and Contreras and was listed on the arrest report as the supervising officer.  Uzoh Decl. Ex. 6 (Arrest Report); Plaintiff's Counter Rule 56.1 Statement ¶ 32.

Rodriguez forwarded these documents to the Kings County District Attorney's Office and spoke on the phone about the case against Jones with Assistant District Attorney ("ADA") Jennifer Bess.  Uzoh Decl. Ex. 3, at 21:16-22:9 (Rodriguez Dep.); Plaintiff's Rule 56.1 Statement ¶ 109.  Based on the information she received from Rodriguez, Bess prepared a Screening Sheet, which notes that Jones was apprehended near the scene of the offense and relates Faloye's version of the incident.  Uzoh Decl. Ex. 10 (Screening Sheet).  The Screening Sheet further states that both the complaining witness (Faloye) and eyewitness (Gibbs) identified Jones in a show-up, conducted on Caton Avenue, at which Contreras was present. *Id*.  Contreras, however, stated in his deposition that he had no interaction with Jones except for seeing him briefly at the precinct.  Uzoh Decl. Ex. 4, at 5:2-21, 62:3-10 (Contreras Dep.).  Jones alleges that no show-up was conducted. *See* Plaintiff's Reply Mem. In Support Mot. Summ. J. 6; *see also* Uzoh Decl. Ex. 2, at  43:3-9, 52:3-5  (Jones Dep.).  As stated above, Rodriguez testified that he heard about the show-up from unknown sources at the precinct, but was not present for it and

does not know who conducted it or where it was conducted.  Uzoh Decl. Ex. 3, at 61:8-17, 151:11-20 (Rodriguez Dep.).

The District Attorney's office issued a misdemeanor complaint, which Rodriguez signed, charging Jones with menacing in the second degree, menacing in the third degree, and harassment in the second degree, in violation of New York Penal Laws 120.14(1), 120.15, and 240.26(1), Uzoh Decl. Ex. 8 (Criminal Complaint); Plaintiff's Rule 56.1 Statement ¶¶ 114-15, and on January 27, 2012, after approximately 48 hours in custody, Jones was arraigned and released on his own recognizance.  *Id.* ¶ 116-118.  After his release, Jones appeared in court several times in relation to these charges.  *Id.* ¶ 120.

On April 9, 2012, Faloye signed a "waiver" form, stating that he did not wish to pursue the charges against Jones because Jones "was not in the store, although a look out, and I am not going back in area."  Uzoh Decl. in Opp. Ex. 8 (Waiver).  The District Attorney dismissed the charges against Jones on April 30, 2012.  Speight Decl. Ex. L (Certificate of Disposition).

B. *Procedural History*

Jones commenced this action on July 24, 2012.  *See* Compl., ECF No. 1.  On October 8, 2013, he moved for partial summary judgment.  That same day, defendants cross-moved for summary judgment on all claims.  I heard oral argument November 7, 2013.

DISCUSSION

A. *The Summary Judgment Standard of Review*

A party is entitled to summary judgment upon a showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if its resolution "might affect the outcome of the suit under

the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether material facts are in dispute all ambiguities are resolved and all inferences are drawn in favor of the non-moving party.  *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact.  *Adams v. Dep't of Juvenile Justice of City of New York*, 143 F.3d 61, 65 (2d Cir. 1998).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . [or] showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Because "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact," *Kerzer*, 156 F.3d at 400, the non-moving party cannot survive a properly supported motion for summary judgment by resting on the pleadings "without offering 'any significant probative evidence tending to support the complaint.'" *Anderson*, 477 U.S. at 249 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290 (1968)).

   B.  *42 U.S.C. § 1983*

            42 U.S.C. § 1983 imposes civil liability on any party who, "under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution" of the United States.  *K & A Radiologic Tech. Servs., Inc. v. Comm'r of Dep't of Health of State of New York*, 189 F.3d 273, 280 (2d Cir. 1999) (quoting *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)).  Section 1983 "does not create a federal right or benefit; it simply provides a mechanism

for enforcing a right or benefit established elsewhere." *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).  The "core purpose of § 1983 is 'to provide compensatory relief to those deprived of their federal rights by state actors.'" *Hardy v. New York City Health and Hosps. Corp.*, 164 F.3d 789, 795 (2d Cir. 1999) (quoting *Felder v. Casey*, 487 U.S. 131, 141 (1988)).  Claims brought under § 1983 are guided by the tort law of the forum state.  *See Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995).

C.  *Qualified Immunity*

"[Q]ualified immunity shields government employees acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their conduct violated clearly established rights of which an objectively reasonable official would have known." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 568-69 (2d Cir. 1996).

> Even if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was "arguable probable cause" to arrest.  Arguable probable cause exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."

*Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).

D.  *The False Arrest Claims*

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted).  The elements of a false arrest claim

9

under New York law are: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer*, 63 F.3d at 118 (alteration in original, internal quotation omitted). If probable cause existed the arrest is considered privileged and "is a complete defense to an action for false arrest whether that action is brought under state law or under § 1983." *Weyant*, 101 F.3d at 852 (internal quotation and citation omitted); *see also Singer*, 63 F.3d at 118-19 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.").

   "Probable cause to arrest exists 'when the [arresting officers] have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested.'" *United States v. Ceballos*, 812 F.2d 42, 50 (2d Cir. 1987) (quoting *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir.1983)) (alteration added). In determining whether probable cause existed, a court must consider "the facts available to the officer at the time of the arrest," *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997), and examine the totality of the circumstances. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983). "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer*, 63 F.3d at 119.

   Jones alleges that Rodriguez falsely arrested him in the early morning hours of January 25, 2012. Jones asserts that Rodriguez lacked probable cause to make the arrest, and

that Contreras, Rodriguez's partner, and Golden, the supervisor on duty, are also liable because they knew or should have known about the false arrest and did not intervene to prevent it.

If the pertinent events and the knowledge of the arresting officer are not in dispute, probable cause may be determined as a matter of law. *Weyant*, 101 F.3d at 852. It is undisputed that Rodriguez became involved with Jones's arrest for the first time at the precinct, after Jones had been handcuffed and transported to the precinct by unknown officers.[5] Plaintiff's Rule 56.1 Statement ¶ 88. It is also undisputed that Rodriguez interviewed Faloye and Gibbs at the precinct and that they both reported that Jones had been with Machon and Welch when Machon threatened Faloye with a firearm and then subsequently left the scene with the other two suspects. The only factual disputes regarding Rodriguez's involvement in Jones's arrest relate to when he learned that a third suspect had been arrested in connection with the menacing incident and whether a show-up was conducted in which Jones was identified by Faloye and Gibbs. For the purposes of defendants' motion, I assume, *arguendo*, that Rodriguez did not find out a third suspect had been arrested until sometime after he returned to the precinct and that no show-up was conducted. *See Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998) ("Even where factual disputes exist . . . a § 1983 claim may fail if the plaintiff's version of events establishes probable cause to arrest.").

As noted above, "[w]hen information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." *See Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001). When Rodriguez arrested Jones there was no reason for him to doubt the veracity of Faloye or Gibbs, and the

---

[5]     Jones concedes that Rodriguez did not effect his arrest; rather, unknown officers were involved in the arrest and Rodriguez encountered Jones for the first time at the precinct. As far as his claim against Rodriguez is concerned, Jones analyzes the lawfulness of the arrest by reference to the facts available to Rodriguez when he prepared the complaint, *see, e.g.*, Plaintiff's Mem. in Opp. Summ. J. 6, and I do the same.

11

information they relayed was sufficient to establish probable cause that Jones acted in concert

with Machon and Welch in committing the crimes that were ultimately charged.

Jones contends that even if Rodriguez had good reason to believe he was next to

Machon when Machon displayed the weapon, there was still no probable cause to believe Jones

participated in Machon's crime.  Jones argues, correctly, that it is not a crime merely to be

present when a crime is under way, and his mere presence next to Machon did not justify any

suspicion that Jones had committed a crime.

However, I conclude that there were sufficient indicia that Jones acted in concert

with Machon to support a finding of probable cause.  First, when Rodriguez and Contreras

arrived on the scene, Faloye immediately complained about multiple perpetrators.  Uzoh Decl.

Ex. 4, at 30:8-31:11 (Contreras Dep.).  When Faloye pointed out the alleged perpetrators,

Contreras saw them up the block, and when he told them to stop, all of them ran away.  *Id.* at

31:15-19.  Second, at the precinct Faloye told Rodriguez that after Machon, Welch and Jones left

the liquor store, he saw Machon pass the gun to Welch, and then all three men entered an

apartment building together, and shortly thereafter exit back onto the street together.  Uzoh Decl.

Ex. 3, at 140:18-141:4 (Rodriguez Dep.).  Finally, at the precinct Faloye identified Jones to

Rodriguez as a perpetrator, not as a witness or mere bystander.  *Id.* at 114:12-15 ("Mr. Faloye

told us Frantz Machon pulled out a firearm and there were two other gentlemen with him, like,

threatening physical harm to him.").  Based on these facts, Rodriguez had ample reason to

conclude that Jones had participated in the threatening behavior that gave rise to the arrests.

Jones places significance on Faloye's execution of a "waiver" of prosecution

more than two months later, but probable cause is determined based on the facts known to the

officer at the time the arrest was made.  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

Accordingly, that Faloye subsequently backed away from prosecuting Jones does not alter the fact that there was probable cause at the time of arrest. I also note that the waiver still alleged that Jones was involved as a lookout.

Even if the information available to Rodriguez at the time he filed the complaint did not give rise to probable cause to arrest Jones, at the very least it established arguable probable cause. *See Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001) ("[T]he court must grant police officers qualified immunity when the court concludes that the only conclusion a reasonable jury could reach is that reasonable officers would disagree on the constitutionality of the seizure."). Having concluded that probable cause existed, it follows that I further conclude that, at the very least, reasonable officers could disagree as to whether there was probable cause to arrest. Accordingly, defendants' motion for summary judgment on Jones's false arrest claim against Rodriguez is granted because probable cause existed at the time Rodriguez became involved in his arrest and on the additional ground of qualified immunity.

As for Contreras and Golden, Jones contends they are liable for false arrest because they violated their duty to intervene to prevent Rodriguez from committing the alleged violation of Jones's constitutional rights. It is true that law enforcement officials have an affirmative duty to intervene to prevent or terminate constitutional violations committed by other officers in their presence, if they know of the violations and have a realistic opportunity to intervene. *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). But there was no such violation here, and accordingly the defendants' motion for summary judgment on this claim against Contreras and Golden is granted.

E.  *The Malicious Prosecution Claim*

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law."  *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (internal citations omitted); *see also Sankar v. City of New York,* 867 F. Supp. 2d 297, 309 (E.D.N.Y. 2012).  The elements of a malicious prosecution claim under New York law are: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice motivating defendant's actions.  *See Manganiello*, 612 F.3d at 160.  Defendants assert that summary judgment denying this claim is appropriate because Jones fails to meet the first, third, and fourth elements of the claim.

Regarding the first element, there exists "a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding." *Espada v. Schneider*, 522 F. Supp. 2d 544, 553 (S.D.N.Y. 2007) (citation and internal quotation omitted).  The presumption can be overcome, however, if a plaintiff can show that "the defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Id.* at 543 (quoting *DeFilippo v. County of Nassau*, 183 N.Y.S. 2d 283, 284 (2d Dep't 1992)).  Further, "[a] jury may permissibly find that a defendant initiated a prosecution where he filed the charges or prepared an alleged false confession and forwarded it to prosecutors." *Manganiello*, 612 F.3d at 163 (citing *Ricciuti*, 124 F.3d at 130) (internal quotation and alteration omitted).

14

Jones alleges that Rodriguez initiated his prosecution both by filing the charges against him and because he forwarded false evidence to the prosecutor.  It is undisputed that Rodriguez swore out the criminal complaint charging Jones with menacing and harassment.  *See* Speight Decl. Ex. H (Criminal Complaint).  This action is sufficient in itself to satisfy the first element of a malicious prosecution claim.  *See Rounseville v. Zahl*, 13 F.3d 624, 628 (2d Cir. 1994) ("[D]efendants swore out an accusatory instrument, which would appear under New York law to satisfy the requirement that the defendants' initiated a criminal proceeding against [plaintiffs].") (citing *DeFilippo*, 583 N.Y.S. 2d at 284); *Ricciuti*, 124 F.3d at 130 ("[A] jury could clearly find that [defendant] started the assault prosecution because no one disputes that he started the prosecution by filing the charges of second-degree assault.").

In a claim for malicious prosecution, probable cause is determined based on the facts known at the time the prosecution is initiated, rather than when the arrest was made.  *See Lovelace v. City of New York*, 02-cv-5398, 2005 WL 552387 at *2 (E.D.N.Y. Mar. 9, 2005); *see also Rounseville*, 13 F.3d at 629 ("In the context of a malicious prosecution claim, probable cause under New York law is 'the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.'") (quoting *Pandolfo v. U.A. Cable Systems of Watertown*, 568 N.Y.S. 2d 981, 982 (4th Dep't 1991)).  Here, however, no intervening information came to light between when Rodriguez became involved in Jones's arrest and his initiation of Jones's prosecution.  As such, the probable cause analysis is the same for both claims.  For the reasons discussed above in connection with the false arrest claim, I conclude that probable cause existed to initiate Jones's prosecution.  *See Obilo v. City Univ. of City of New York,* 01-cv-5118, 2003 WL 1809471, at *9 (E.D.N.Y. Apr. 7, 2003) ("Probable cause to arrest is sufficient for probable

cause to prosecute unless facts come to light between the arrest and arraignment that vitiate the probable cause.").

Once again, even if Rodriguez did not have probable cause to initiate criminal proceedings against Jones, he at least had arguable probable cause, and is thus protected by the doctrine of qualified immunity. *See Anderson v. Creighton*, 483 U.S. 635, 641, (1987) ("[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable."). Accordingly, defendants' motion for summary judgment on this claim against Rodriguez is granted and the derivative claims against Contreras and Golden are dismissed as well. *See Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) ("[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York.") (citing *Colon v. City of New York*, 60 N.Y.2d 78, 82 (N.Y. 1983)).

F. *The Right to a Fair Trial/Fabrication of Evidence Claim Against Rodriguez*

A person suffers a constitutional violation redressable under § 1983 if an investigating official creates false information that is likely to influence a jury's decision, forwards that information to prosecutors, and the plaintiff is deprived of his liberty as a result.[6] *See Ricciuti,* 124 F.3d at 130; *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (unpublished). In contrast to a claim of false arrest or malicious prosecution, the existence of probable cause does not defeat a claim of fabrication of evidence. *See Ricciuti*, 124 F.3d at 130 ("To hold that police officers, having lawfully arrested a suspect, are then free to fabricate

---

[6]     It is undisputed that Jones was deprived of his liberty due to his criminal prosecution in this matter. *See* Plaintiff's Rule 56.1 Statement ¶ 119 ("Plaintiff . . . was subject to travel restrictions as he was required to render himself at all times amenable to the orders and processes of the court."); Defendants' Response Rule 56.1 Statement ¶ 119 ("Admit.").

false confessions at will, would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice."). A plaintiff asserting a fair trial claim need not show he was convicted or that the case even went to trial. *See id.* at 127 (all criminal charges dismissed by court prior to trial).

Jones asserts that Rodriguez should be held liable for fabricating evidence on two bases. First, he alleges that Rodriguez fabricated evidence that Contreras conducted a show-up on Canton Avenue during which Jones was identified by Faloye as one of the perpetrators of the incident at the liquor store. Plaintiff's Mem. in Support Summ. J. 22. In support of this contention, Jones highlights the Complaint Room Screening Sheet filled out by ADA Bess. *See* Uzoh Decl. Ex. 10 (Screening Sheet). In this form, Bess reported that Contreras was the officer present at Caton Avenue when Jones was identified. *Id.* Bess indicated on the form that she interviewed both Rodriguez and Faloye over the phone in the process of filling out the form. *Id.* As noted above, however, Contreras stated in his deposition that he had no interaction with Jones on the night of January 24, 2012, or early on January 25, and only briefly saw Jones at the precinct. Uzoh Decl. Ex. 4, at 5:2-21, 62:3-10 (Contreras Dep.). Jones alleges that no show-up was conducted. *See* Plaintiff's Reply Mem. in Support Summ. J. 6; *see also* Uzoh Decl. Ex. 2, at 43:3-9, 52:3-5 (Jones Dep.).

In light of the undisputed fact that Faloye directly implicated Jones in the crime when questioned by Rodriguez, it hardly seems plausible that Rodriguez would deliberately make a false statement to the District Attorney's Office that Faloye had earlier identified Jones in a show-up. Moreover, it is undisputed that Rodriguez was told at the precinct that such a show-up had occurred. Uzoh Decl. Ex. 3, at 61:15-17, 64:7-9, 73:18-20 (Rodriguez Dep.). Thus, he would be fully entitled to rely on that information even if it turned out to be false.

However, even assuming that (1) no show-up occurred, (2) Rodriguez knew that, and (3) he nevertheless falsely reported to the ADA that one had occurred, Jones's claim fails because the allegedly fabricated evidence was insufficiently material to sustain the cause of action.  In order to succeed on a fabrication of evidence claim, the false information must be "likely to influence a jury's decision."  *Ricciuti*, 124 F.3d at 130 (alleged false confession); *see also*, *e.g.*, *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003) (alleged false confession); *Deskovic v. City of Peekskill*, 894 F. Supp. 2d 443, 452 (S.D.N.Y. 2012) (alleged false inculpatory statement).

First, a false statement by Rodriguez to an ADA that Jones was identified in a show-up would never even get to a jury – it would amount to inadmissible hearsay – a far cry from the alleged false confessions at issue in *Ricciuti* and *Jocks*.  *See Ricciuti*, 124 F.3d at 130; *Jocks*, 316 F.3d at 138.  Second, even if evidence of the alleged show-up was somehow admitted at trial, show-ups are famously unreliably; they are the most suggestive of all identification procedures.  The undisputed statements Faloye made to Rodriguez at the precinct identifying Jones as acting in concert with Machon and Welch would render evidence of the allegedly fabricated show-up essentially immaterial.  Accordingly, evidence of the show-up would not be "likely to influence a jury's decision," as required to establish a claim of fabrication of evidence. *See Ricciuti*, 124 F.3d at 130.  Defendants' motion for summary judgment on this claim is therefore granted.

G.  *The First Amendment Retaliation Claim*

To establish a First Amendment retaliation claim, Jones must prove that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled

18

the exercise of his First Amendment right." *Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010) (quoting *Village of Suffern*, 268 F.3d at 73). Here, even taking all inferences in his favor, Jones has failed to satisfy any of these required showings. He has not explained why his desire to walk to a store to buy food should be considered expression protected by the First Amendment; he points to no evidence showing that his arrest or prosecution was motivated by his exercise of this allegedly "expressive" conduct; and there is no basis for concluding that his arrest or prosecution chilled the exercise of his First Amendment rights. *See*, *e.g.*, *Village of Suffern*, 268 F.3d 65 at 75 ("Specific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim."). Accordingly, defendants' motion for summary judgment on this claim is granted.

H.  *The Excessive Force Claim*

A police officer's use of force is "excessive" and thus amounts to a violation of the Fourth Amendment, if it is "objectively unreasonable 'in light of the facts and circumstances confronting [the officer] . . . .'" *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (quoting *Graham v. Connor,* 490 U.S. 386, 397 (1989)). Determining whether the use of force was reasonable necessitates "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). This analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. (citing *Garner*, 471 U.S. at 8-9). "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."

*Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (citations and internal quotation omitted).  But "[i]f the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe." *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987).

Jones alleges in his complaint that just after he was arrested on Caton Avenue, he was "subjected to an illegal search, with defendant officers pushing, shoving, kicking and threatening the plaintiff with physical harm."  Am. Compl. ¶ 15.  To a significant degree, Jones refutes his own allegations in his deposition, in which he testified that after he was handcuffed he was immediately placed into a police car and driven to the precinct.  Uzoh Decl. Ex. 2, at 42:1-43:10 (Jones Dep.).  Further, in response to the question "[W]ere you searched at any time during your interaction with police officers?" Jones replied "No, no, no, not that I remember." *Id.* at 62:2-4.  Because there is no other evidence, or even allegations in Jones's papers, regarding this alleged illegal search and excessive use of force, defendants' motion for summary judgment on these claims is granted.

Jones also alleges that excessive force was used against him when the unknown officer who initially arrested him on Caton Avenue handcuffed him more tightly than was necessary.  Defendants claim that summary judgment on this claim is appropriate because, *inter alia*, Jones has failed to demonstrate the personal involvement of any of the named defendants. Personal involvement of a defendant is a prerequisite to a damages award for a § 1983 claim. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).  A police officer is personally involved in the use of excessive force for purposes of a § 1983 claim where "[1] a police officer directly participates in an assault, or [2] was present during the assault with reasonable opportunity to intercede on plaintiff's behalf yet failed to do so." *Espada*, 522 F. Supp. 2d at 555 (citing

20

*Younger v. City of New York*, 480 F. Supp. 2d 723, 732 (S.D.N.Y. 2007)).  I agree that Jones has

failed to allege or demonstrate that any named defendant was personally involved in this second

claim of excessive force.[7]  As such, defendants' motion for summary judgment as to this claim is

also granted.

    I.   *The Conspiracy Claim under 42 U.S.C. § 1985*

              To make out a claim under 42 U.S.C. § 1985(3), a plaintiff must plead and prove:

(1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class

of persons of equal protection of the laws, and (3) an act in furtherance of the conspiracy (4)

whereby a person is deprived of any right of a citizen of the United States.  *Brown v. City of

Oneonta,* 221 F.3d 329, 341 (2d Cir. 2000).  Furthermore, the conspiracy must be motivated by

some class-based animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Mian v. Donaldson,

Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993).

              Although Jones makes conclusory allegations of a conspiracy and attempts to

ascribe a racial animus to the police officers involved in his arrest to support his claim that they

sought to deprive him of equal protection of the laws, he has adduced no facts to support such a

claim.  The defendants' motion for summary judgment on this claim is therefore granted.

    J.   Monell *Claims Against the City of New York*

              In *Monell v. Dep't of Social Servs.*, the Supreme Court held that in certain

instances a municipality may be held liable for the tortious conduct of its employees.  436 U.S.

658 (1977).  However, "governments should be held responsible when, and only when, their

official policies cause their employees to violate another person's constitutional rights."  *City of

St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988); *see also Bd. Of County Comm'rs v. Brown*,

---

[7]      The same defect constitutes an additional ground for dismissal of the excessive force claim
discussed in the preceding paragraph.  The officer or officers who engaged in that conduct are not defendants here.

520 U.S. 397, 403 (1997) ("A municipality may not be held liable . . . solely because it employs a tortfeasor.").  In sum, "[e]stablishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors and, in addition, that their commission of the tort resulted from a custom or policy of the municipality." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013).

My conclusion that none of the individual defendants committed a constitutional violation requires, at least on the facts of this case, a dismissal of the *Monell* claim as well. Moreover, for the reasons discussed below, the *Monell* claim would fail even if one or more of the claims against the individual officers survived.

Jones claims that the City is liable for injuries stemming from his arrest based on a failure to train and a failure to supervise, in violation of § 1983. Specifically, he cites a portion of Rodriguez's deposition testimony, which he asserts establishes that New York City police officers routinely arrest "mere bystanders whenever they receive a complaint that an individual displayed a gun."  Plaintiff's Mem. in Opp. Mot. Summ. J. 23.  In further support of this claim, Jones notes the "numerous civil rights actions filed against the City of New York in the state and federal courts." Am. Compl. ¶ 35.  Jones also lists a long litany of supposed failings of the City in training and supervising the police force and the District Attorney's Office, many of which bear no apparent relation to this case.  *Id.* ¶¶ 32-34.

First, Jones has distorted Rodriguez's deposition testimony.  Rodriguez actually stated it is *not* the policy of the New York police department to arrest mere bystanders, but only to arrest accomplices.  *See* Uzoh Decl. Ex. 3, at 113:3-114:18 (Rodriguez Dep.).  Rodriguez's statements do not support the inference that a custom or policy exists that caused Jones's alleged constitutional injuries.  Second, the existence of other lawsuits against the City alleging similar

violations of constitutional rights also does not establish a policy or custom as necessary under

*Monell*.  *See Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 23 (2d Cir. 2012) (unpublished).

Ultimately, Jones has provided only conclusory allegations that the conduct he complains of was

the result of a custom or policy of the City. *See Dwares v. City of New York*, 985 F.2d 94, 100

(2d Cir. 1993) ("The mere assertion . . . that a municipality has such a custom or policy is

insufficient in the absence of allegations of fact tending to support, at least circumstantially, such

an inference."), *overruled on other grounds*, *Leatherman v. Tarrant County Narcotics*

*Intelligence & Coordination Unit,* 507 U.S. 163 (1993).  The lack of any evidence of a municipal

custom or policy also necessitates granting defendants' motion for summary judgment on Jones's

*Monell* claim against the City.[8]

CONCLUSION

For the reasons stated above, Jones's motion for summary judgment is denied.

Defendants' cross-motion for summary judgment is granted on all claims.  The Clerk of the

Court is respectfully requested to enter judgment accordingly and to close the case.

So ordered.

John Gleeson, U.S.D.J.


Dated:  November 14, 2013
        Brooklyn, New York

---

[8]         Jones's amended complaint asserts a litany of state-law claims, ranging from negligent hiring and retention to the infliction of cruel and unusual punishment to due process deprivation to negligent infliction of emotional distress.  These claims have received scant or no attention in the briefs.  For the same reason their federal counterparts have been dismissed, the state law claims of false imprisonment, malicious prosecution, and battery are dismissed.  The remaining claims find no support in the record developed during discovery and are dismissed as well.  I need not address the defendants' procedural argument.

23